No. 20,156.

JOHN GILLIES, *Appellee,* v. GEORGE S. LINSCOTT, *Appellant.*

SYLLABUS BY THE COURT.

1. PURCHASE OF CORPORATE STOCK—*Fraud—Evidence.* The evidence to support allegations of fraud in the purchase of corporate stock by plaintiff's agent examined and found sufficient to justify the court's refusal to order an instructed verdict.

2. SAME—*Trial—Instructions as a Whole.* It is not necessary to state all the law of a case in one instruction to the jury, and a single instruction which is correct so far as it goes can not be excised from its context and interpreted to govern the entire controversy without regard to other appropriate instructions which were also given.

3. SAME—*Answers to Special Questions—Defendant Not Entitled to Judgment on the Findings.* Where the main issue in an action to recover the purchase price of corporate stock from the plaintiff's agent was on the question of the agent's fraudulent conduct in procuring outstanding stock instead of treasury stock, the jury were asked this question:

"Q. 9. Did the defendant tell the plaintiff at the time of each of said purchases that he could purchase preferred stock in the Mahogany Lumber and Transportation Company at a hundred dollars per share?"

The jury's first answer was:

"A. The evidence shows (see checks made to M. L. & T. Co.) that defendant led plaintiff to believe stock was from said company, and worth $100.00 per share."

Gillies v. Linscott.

On motion of defendant, the jury were required to retire and make a more definite and specific answer to this question, and their corrected answer was "Yes."

*Held,* that by the aid of the first answer and the other special findings, it is clear that the jury did not intend to adopt defendant's contention that he was authorized to purchase outstanding stock; and *held,* also, that the defendant was not entitled to judgment on this finding.

4. SAME—*Trial—Evidence Supports Judgment for Plaintiff.* The plaintiff requested the defendant, his banker in whom he had implicit confidence, to find a safe investment for some money. The defendant recommended the preferred stock of a navigation company, saying that he and his father and brothers were interested in the company to the extent of $30,000, and undertook to procure treasury stock from the company for plaintiff. Plaintiff gave a check for $800, payable to the company, for eight shares of stock procured for him by defendant. Later the defendant procured twenty additional shares for plaintiff under the same circumstances, and which were also paid for by plaintiff's check for $2000 in favor of the company. The company never received the checks or their proceeds, nor did plaintiff's money go to enhance the corporate capital or assets. The checks were cashed by defendant without indorsement, and the proceeds disposed of by defendant, and the corporate stock which defendant procured and delivered to plaintiff was outstanding stock acquired from defendant's brother and mother, and not treasury stock. The true extent of the interest of defendant and his father and brothers in the navigation company was only $11,000, invested in preferred stock, and a holding of $17,500 of common stock of no value. The foregoing and incidental facts held sufficient to support a judgment for plaintiff for the return of the purchase price and interest, less dividends received.

5. SAME—*Fraud—Rescission of Contract—Limitation of Actions.* Rule followed that in actions for relief on the ground of fraud, whether that relief be for rescission or damages, the statute of limitations does not commence to operate until the discovery of the fraud.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed May 6, 1916. Affirmed.

*Charles Hayden, E. D. Woodburn, F. T. Woodburn,* all of Holton, *J. K. Codding,* of Leavenworth, and *A. E. Crane,* of Atchison, for the appellant.

*M. N. McNaughton,* of Leavenworth, and *John D. Myers,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case was here before on a question as to the sufficiency of the petition. (*Gillies v. Linscott*, 94 Kan. 217, 146 Pac. 327.) It is an action to recover the sum paid for stock in a corporation. The plaintiff had been a depositor in the defendant's bank in Holton for many years. In May, 1904, the plaintiff had about $800 in the bank and he asked the defendant if he knew where it could be safely invested. Some days later the defendant told him that he had a place for plaintiff's money, in the preferred stock of The Mahogany Lumber Transportation Company, a corporation operating two ships in the Gulf of Mexico, with headquarters at Mobile, Ala., and that the defendant thought it would be a safe investment, and that he and his father and brothers were interested in the company to the extent of $30,000; and that the preferred stock was selling at $100 per share.

The plaintiff purchased eight shares of preferred stock for $800 on May 16, 1904, which the defendant procured for him. The payment was made by a check in favor of The Mahogany Lumber Transportation Company. The company did not receive the check, nor would it have been entitled to it under the circumstances, for the defendant had procured the eight shares from his brother. The check was cashed by defendant.

Dividends of seven per cent per annum were regularly paid by the corporation until 1908.

In June, 1907, under similar circumstances, the plaintiff purchased twenty shares of preferred stock. This time the stock procured for him by the defendant had belonged to defendant's mother, although it stood on the stock register of the company as belonging to defendant's deceased father. The payment was by check in favor of the corporation as before, and cashed as in the first transaction.

In 1909 there was a default of dividends, probably through the shipwreck of one of the vessels of the company. No later dividends were paid. The plaintiff set about an investigation of the company's affairs in 1912, and discovered that the stock sold to him was not treasury stock, but stock owned by the Linscott family; and in May, 1913, he brought this action, setting up the facts just recited, alleging that he purchased the

stock relying on the integrity, truthfulness and business capacity of the defendant and on the representations made to him, and with no knowledge of his own, and that the defendant's statements that he and his father and brothers had an interest to the amount of $30,000 in the company were untrue, and that defendant's statements that the company was selling its preferred stock at $100 and that it was a good, safe and profitable investment were false, fraudulent and deceitful, and well known by defendant to be so when made, and that these statements were made with intent to deceive and defraud the plaintiff.

The petition continues:

"That in fact and in truth said company, at the times above mentioned, was offering to the public one share of preferred stock of the par value of $100, and one share of common stock of the par value of $50, together, for sale at the price of $100 for the two shares; that defendant instead of procuring twenty-eight shares of preferred stock from the company and paying the said company the purchase price thereof, as he represented and was authorized so to do, converted the money theretofore paid him by the plaintiff to purchase said shares of stock to his own use, procured twenty-eight shares of other stock, to be transferred upon the books of said company, and to be issued to said plaintiff, and was to plaintiff delivered, and represented to [him] by said defendant as and for twenty-eight shares of stock purchased from said company, which said representation the plaintiff believed to be true and relied fully thereon; . . . that said statements and representations were made . . . with the intent to cheat and defraud and deceive the plaintiff, and by means of such fraud and deceit to induce . . . him to believe . . . that he was purchasing said stock from the said company, . . . which shares of stock were in fact at the times set forth of no value, as the defendant then well knew."

The plaintiff recovered judgment for the amount paid by him for the stock, with interest, less the amount of the dividends he had received from the company. The defendant appeals, contending that he was entitled to an instructed verdict, that he should have had judgment on the jury's findings of fact, that certain answers of the jury to special questions were unfairly made, and that certain instructions to the jury were erroneous.

1. Appellant's first contention is that every material fact alleged by plaintiff was disputed by his own testimony. On cross-examination, plaintiff conceded that the Linscotts did have $28,500 in stock of the company, which would have been

a sufficiently precise statement to warrant the defendant in saying "We are interested in the company to the amount of $30,000," if the Linscotts in fact had invested $28,500 in the company. But the defendant admitted that only $11,000 of the stock was preferred, and the remainder was common stock of no value. It will thus be seen that the extent of the Linscotts' interest was grossly misrepresented.

Another disputed question was whether the stock which defendant was to procure for plaintiff should have been treasury stock purchased from the company or whether it might be stock procured elsewhere. The plaintiff was cross-examined with exceptional cleverness:

"Q. Now, I will ask you this, whether this question was asked you and you answered it as follows, at the other trial in Jackson County: 'Tell again what George told you; what he said to you at the time you bought those eight shares of stock. A. Well, George said he could purchase me eight shares of stock in The Mahogany Lumber and Transportation Company.' Q. Was that question asked, and did you answer it in that manner? A. Yes.

. . . . . . . . . . . . . . . . . . . .

"Q. All this lawsuit comes from the fact it did n't keep on making a dividend, is it not? A. Yes, sir."

It would never do, however, to lay it down as a matter of law that because a litigant makes a fool of himself on the witness stand, or because a skillful lawyer entangles him into admissions against his interest, he must lose his cause. Counsel may make the most of such inconsistencies in his argument to the jury. It is the jury's province to harmonize the evidence and sift the false from the true, the rational from the irrational, the consistent from the inconsistent. Elsewhere the defendant testified that if the company had continued to pay dividends he would never have investigated the matter, and consequently he never would have known that his investments did not go to augment the capital of the company. That the purchase of treasury stock was the defendant's intention is clearly evidenced by his checks in payment for his stock. These checks were payable to the company, and as they were never delivered to the company, but cashed by defendant in a most unusual and irregular manner, this was a circumstance tending to show the defendant's duplicity. This is sufficient to show that the defendant was not entitled to an instructed verdict.

2. The appellant assigns error on the overruling of his motion for judgment on an answer to a question propounded in harmony with an instruction given by the court.

The instruction reads:

"12. You are instructed that if you find from the evidence that the defendant told the plaintiff at the time he talked with him about purchasing preferred stock in the Mahogany Lumber and Transportation Company, in May, 1904, and in June, 1907, that he could get the plaintiff preferred stock in said company and that he purchased it for him, then your verdict must be for the defendant."

The question and answer read:

"Q. 9.   Did the defendant tell the plaintiff at the time of each of said purchases that he could purchase preferred stock in the Mahogany Lumber and Transportation Company at a hundred dollars per share? A. Yes."

Neither this instruction nor the question and answer quite covered the issue. There was no controversy as to whether the defendant told the plaintiff that he *could purchase* preferred stock. The gist of this lawsuit was whether the defendant was authorized to purchase the stock from any source or whether he was to procure it from the company. Plaintiff, having great respect for the financial sagacity of the Linscotts, desired to follow their judgment and invest his money where they had invested $30,000 and in a place which defendant recommended as safe. It is absurd to suppose that plaintiff, a landsman in Jefferson county, residing a thousand miles from the sea, would invest his money in the stock of a navigation company of which he had no independent knowledge and in stocks which his trusted banker and relatives were getting rid of.

The other pertinent instructions and the general and special findings of the jury must not be overlooked. It will not do to excise a single instruction from its context. The instructions must be read and construed together. Another instruction, in part, reads:

"4.  .  .  .   and in this case if you believe from a preponderance of the evidence that the plaintiff instructed the defendant to purchase stock direct from the Mahogany Lumber and Transportation Company, and the defendant did not purchase such shares direct from said company, but purchased shares of stock from some other person or persons, the plaintiff upon discovering such fact had the right to repudiate such pur-

chase of said shares of stock, tender them back to the plaintiff and recover the money given the defendant by plaintiff to purchase said shares of stock."

This instruction covered the crux of this lawsuit. Some light may be gathered touching the jury's understanding of question No. 9 from their first answer to this question:

"Q. 9. Did the defendant tell the plaintiff at the time of each of said purchases that he could purchase preferred stock in the Mahogany Lumber and Transportation Company at a hundred dollars per share? A. The evidence shows (see checks made to M. L. & T. Co.) that defendant led plaintiff to believe stock was from said company, and worth $100 per share."

In response to appellant's motion, the jury were required to retire and make more definite and specific answers to this and other questions. In compliance therewith, they then answered question No. 9 with a simple affirmative. But it can not be said that by this simplification of their first answer they intended to adopt defendant's theory of the case, that he was privileged to procure for plaintiff any sort of preferred stock from any source. The special answers clearly show that the jury were tenacious of the proposition that the plaintiff had bargained for treasury stock, and that he was deceived by the defendant. Thus:

"Q. 11. If you find for the plaintiff and against the defendant, state fully what fraudulent conduct of the defendant you base your verdict upon. A. (1) The checks here in evidence show that while made to M. L. & T. Co., the defendant stated on stand that the checks were not intended for said company, neither were said checks indorsed on back by or to anybody, yet were collected by the defendant.

"(2) The fact that plaintiff bought said stock due to the representation of defendant. The statement of the defendant that he and family had about $30,000.00 in company, that he, plaintiff, was thereby led to purchase stock."

3. The complaint that the jury did not answer the questions fairly calls for no extended discussion. They certainly show no passion or prejudice. Some of these will illustrate:

"Q. 1. Was the business of the Mahogany Lumber and Transportation Company prosperous in May, 1904, when the plaintiff purchased the first eight shares of stock? A. 1. Yes, to all appearances.

"Q. 2. Was the Mahogany Lumber and Transportation Company doing a prosperous business in June, 1907, when the plaintiff purchased the last twenty shares of stock? A. 2. Yes, to all appearances.

Gillies v. Linscott.

."Q. 3. Did the Mahogany Lumber and Transportation Company pay to its stockholders, who held preferred stock, dividends of seven per cent, from the time it was organized until the year 1909? [First Answer] A. 3. No evidence to show that dividends were paid prior to the payments made to John Gillies. [Second Answer] A. 3. No."

Another answer criticized reads:

"Q. 5. Did the defendant get any profit at either time out of the purchase of the stock for the plaintiff. A. 5. Yes."

It is said there was no evidence to support this finding. Perhaps so, unless it was by fair inference to be drawn from the curious conduct of defendant in cashing the checks drawn in favor of the corporation. The jury may have wholly disbelieved defendant's avowal that he turned the proceeds over to the members of his family, from whom the stock was procured. But the sufficient answer to this assignment of error is that it was of no consequence whether the defendant, as plaintiff's agent to purchase the stock, made any profit out of the transaction or not. He was to procure stock from the company, and he procured it elsewhere. If he had purchased stock from the company its financial·capacity would have been just so much enhanced. The purchase of his brother's and mother's stock for defendant availed naught to the benefit of the company.

4. The errors assigned which pertain to the instructions have been examined, but we think they are without merit and call for no discussion.

5. So, too, the general objections to the net result: The statute of limitations did not begin to run until the fraud was discovered. Plaintiff's confidence in defendant and defendant's family, founded on long years of fair business dealings, was not easily shaken. One brother was the corporation's managing officer. Plaintiff was bound by what the official reports of the company disclosed; but nothing transpired to arouse his suspicion that the defendant had not procured for him what he bargained for, until the continued failure of dividends prompted him to make the· investigation which disclosed the cause of action which he has presented here, and since it was within time and is supported by the evidence, and concluded by the verdict and judgment, the result must be respected.

The judgment is affirmed.